UNITED STATES DISTRICT COURT

Northern District of California

R.K., a Minor, by and through TONY KO, his guardian ad litem,

              Plaintiffs,

  v.

CITY OF HAYWARD, CALIFORNIA,

              Defendant.
_____/

No. C 05-01686 MEJ

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Pending before the Court is Defendant City of Hayward's Motion for Summary Judgment (Dkt. #64). R.K.,[1] by and through his guardian ad litem, Plaintiff Tony Ko, filed an Opposition (Dkt. #70), to which Defendant filed a Reply (Dkt. #71). The parties have also filed a Joint Statement of Undisputed Facts (Dkt. #65, "JSOF"), and Defendant has filed a Separate Statement of Undisputed Fact #16 (Dkt. #66). On July 30, 2009, the Court held a hearing on the Motion. Following the hearing, the Court ordered the parties to file supplemental briefs addressing certain issues relating to Plaintiff's civil rights claim against Defendant. Accordingly, Defendant has filed a Supplemental Brief (Dkt. #77), Plaintiff has filed a Supplemental Opposition (Dkt. #83), and Defendant has filed a Supplemental Reply (Dkt. #86). After carefully considering the parties' briefs, legal authorities, and oral argument, the Court **GRANTS** summary judgment in favor of Defendant.

### I.   BACKGROUND

      Plaintiff initiated this action on April 25, 2005, on behalf of his minor son, R.K., by filing a Complaint against the City of Hayward - the sole named defendant. (Dkt. #1.) In the Complaint, Plaintiff alleges that on March 3, 2004, a Hayward Police officer unlawfully seized R.K. from his elementary school classroom and transported him to the Hayward Police Department's Youth & Family Services Bureau ("YFSB") office, in violation of R.K.'s Fourth and Fourteenth Amendments

---

[1] Pursuant to Civil Local Rule 3-17, "If the involvement of a minor child must be mentioned in a pleading or other paper filed in the public file, only the initials of that child should be used." The Court will refer to Plaintiff accordingly.

rights. (Compl. at ¶¶9-12.) As a result, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against Defendant for violation of R.K.'s constitutional rights.

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id*. If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *See Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id*. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *See id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment. *Orr*, 285 F.3d at 773-74, 778.

### III. DISCUSSION

**A. Factual Background**

Except where indicated, the following facts taken from the parties' Joint Statement[2] and briefs are undisputed. There are no pending evidentiary challenges.

In March 2004, R.K. was a student at Eldridge Elementary School. (JSOF ¶1.) On March 1, 2004, staff from Eldridge Elementary School called the Hayward Police Department requesting assistance with a student who had threatened to kill a teacher and other students in his classroom. (JSOF ¶1.) Hayward Police Officer Rodney Pierce responded to the call by going to Eldridge Elementary School to perform a welfare check on the student. (JSOF ¶¶1, 3.) When he arrived at the school, Officer Pierce was informed by school staff that the student, R.K., was in a general education class and was being very disruptive. (JSOF ¶1.) Officer Pierce observed R.K. sitting at a table facing the rear door of an empty classroom and appeared agitated, as if R.K. was either unhappy or angry. (JSOF ¶5.) At that time, R.K. was not throwing things or acting violently, and he appeared to be cooperating with school officials. (JSOF ¶5.) Officer Pierce spoke with Eldridge Elementary School Principal Nancy Eaton, who requested that Officer Pierce remove R.K. from the school. (JSOF ¶4.)

In the interim, Ms. Eaton had instructed the school's office manager, Marla Sather, to call R.K.'s parents. (JSOF ¶2.) Ms. Sather contacted Mr. Ko and informed him that the police had been called to the school. (JSOF ¶2.) In response, Mr. Ko came to the school. (JSOF ¶2.)

At Mr. Ko's request, Officer Pierce spoke with Mr. Ko outside the classroom where R.K.

---

[2]To the extent that the Court is relying on facts as presented in the parties' Joint Statement, the Court presumes - at least for purposes of this Motion - that the parties have no evidentiary objections those facts.

3

was sitting. (JSOF ¶2.) Mr. Ko informed Officer Pierce that R.K. had been diagnosed with Asperger's, a form of autism. (JSOF ¶6.) Mr. Ko also told Officer Pierce that R.K. "need [sic] to know it is not ok to threaten to kill people," and suggested "that if this were coming from a[] police officer directly[,] it may not be a bad thing[.]" (JSOF ¶7.)

Thereafter, Ms. Eaton and other school officials met with Mr. Ko and Officer Pierce. (JSOF ¶8.) The school officials indicated that R.K. could not be left alone to calm down because he would destroy things. (JSOF ¶8.) School officials also informed Officer Pierce and Mr. Ko that R.K.'s teacher had indicated that R.K. hit her daily. (JSOF ¶8.) Following that meeting, Mr. Ko took R.K. home. (JSOF ¶9.)

Subsequently, on March 3, 2004, Eldridge School staff called Hayward Police to report a student who was incorrigible and making threats. (JSOF ¶10.) Officer Pierce heard the call over his police radio and because he recognized the school and the name from two days earlier, he responded to the call. (JSOF ¶10.) When he arrived at Eldridge Elementary School, Officer Pierce spoke with Ms. Sather, who informed him that R.K. was threatening students and staff at the school. (JSOF ¶10.) The school officials again requested that Officer Peirce remove R.K. from the school. (JSOF ¶12.) They indicated that R.K. was behaving violently and making verbal threats. (JSOF ¶12.) According to Officer Pierce, on either March 1 or March 3, school officials also informed him that R.K. had scratched a teacher's arm. (JSOF ¶12.)

After he spoke with the school officials, Officer Pierce suggested that the school contact R.K.'s parents. (JSOF ¶13.) A school official informed Officer Pierce that R.K.'s parents had been called, but could not get to the school in a timely manner. (JSOF ¶13.)[3]

According to Defendants, after he arrived at the school on March 3 and spoke with school officials, Officer Pierce believed that R.K. was a minor described in California Welfare & Institutions Code section 601(b), and understood that he was authorized to take R.K. into temporary

---

[3] In fact, school officials had not called R.K.'s parents. Rather, the first call Mr. Ko received from school officials that day was from Ms. Sather, who called Mr. Ko and informed him that R.K. was already at the police station. (JSOF ¶14.) After receiving this call, Mr. Ko immediately left for the police station. (JSOF ¶14.)

4

custody. (Dkt. #66, Defendant's Separate Statement of Fact #16.) Plaintiff, however, disputes this fact. It is undisputed, however, that Office Pierce testified, at that time, he had reasonable suspicion that R.K. may have violated California law. (JSOF ¶17.)

Although Ms. Eaton had requested a "5150" assessment of R.K., Officer Pierce did not believe that Ryan met the criteria of "5150" at that time. (JSOF ¶18.) He also did not believe that the provisions of California Welfare & Institutions Code section 300[4] were applicable because he did not believe that there was a substantial risk that R.K. would suffer injury, serious harm or illness, or serious emotional damage. (JSOF ¶18.) Officer Pierce knew that the school staff claimed they did not feel safe with R.K. there, and he believed that this could lead to other issues where R.K. could possibly be in an unsafe situation. (JSOF ¶19.) Officer Pierce was also aware that before proceeding with crisis counseling or an emergency counseling session, a "5150" assessment is generally done by YFSB staff to make sure that a youth is not a threat to himself or others, and if so, the seriousness of the threat. (JSOF ¶20.)

Officer Pierce then requested that the YFSB send a counselor in an unmarked vehicle to the school to transport R.K. to the YFSB office for crisis counseling. (JSOF ¶¶15, 20.) At that time, YFSB was under a Community Based Master Contract with the Alameda County Probation Department to provide crisis intervention, counseling, diversion, and case management services to Hayward minors described by sections 601 and 602 of the California Welfare & Institutions Code and their families. (JSOF ¶32.)

Patricia Rodriguez, a family counselor with YFSB, responded to Officer Pierce's request. (JSOF ¶21.) Ms. Rodriguez met Officer Pierce at the school. (JSOF ¶22.) At that time, Officer Pierce informed her that R.K. had Asperger's and was having a difficult time at school, and that the school officials wanted him removed. (JSOF ¶22.) Ms. Rodriguez testified that she had been told that Ms. Eaton requested a "5150" assessment of R.K. after he "allegedly had threatened to kill one

---

[4] Section 300 of California's Welfare & Institutions Code sets forth circumstances under which a child comes "within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court." Cal. Welf. & Inst. Code § 300.

of his teachers." (JSOF ¶22.)

Ms. Rodriguez did not think that the school was a comfortable place for R.K., who was surrounded by a number of adults who had already said that they did not want him there. (JSOF ¶23.) She noticed that R.K. was to the side and it appeared that the adults were physically detaining him. (JSOF ¶23.) Ms. Rodriguez determined that it would be better to get R.K. to a safer place. (JSOF ¶23.) She noted that R.K. appeared anxious and scared. (JSOF ¶23.) However, Ms. Rodriguez did not think that he was a threat to himself or others to a point where he would be "5150'd." (JSOF ¶23.)

Hayward Police officers are charged with discretion to make a determination at the scene of the necessity for a "5150" evaluation or crisis counseling based on facts known to the officers at the time. (JSOF ¶24.) Officer Pierce and Lieutenant Chris Orrey (then YFSB Sergeant)[5] decided it was necessary to transport R.K. from his school to the YFSB offices. (JSOF ¶24.) Because R.K. did not want to go with Ms. Rodriguez, Officer Pierce assisted getting R.K. into the car. (JSOF ¶25.) After R.K. was inside the car, Officer Pierce followed Ms. Rodriguez's car to the YFSB offices, which are adjacent to the Hayward Police Department.[6] (JSOF ¶26.) In the car, R.K. was biting his arm and pulling at his hair. (JSOF ¶25.) By the time R.K. walked down the hall of the YFSB offices, he was calm. (JSOF ¶26.) R.K. arrived at the YFSB offices at 11:45 a.m. (JSOF ¶30.) Mr. Ko arrived about an hour later. (JSOF ¶30.) Officer Pierce then used the YFSB vehicle to pick up Mrs. Ko at her house and take her to the YFSB office. (JSOF ¶27.)

At some point thereafter, Ms. Rodriguez and family counsel Denise Perez met with Officer Pierce and discussed R.K.'s behavior at the school and in Ms. Rodriguez's car, while considering a "5150" assessment. (JSOF ¶28.) Ms. Perez also met with R.K. (JSOF ¶29.) She testified that R.K.

---

[5]Neither party sets forth any facts relating to Lt. Chris Orrey's role in transporting R.K. from his school to the YFSB office. Instead, it appears that Plaintiff based his claim solely on Officer Pierce's conduct.

[6]The YFSB are located at the end of the Hayward Police Department's building, and have a separate private, secured entrance. (JSOF ¶26.)

initially seemed a little upset, but settled down. (JSOF ¶29.) She also met with Mr. and Mrs. Ko. (JSOF ¶29.) Ms. Perez concluded that R.K. "was not 5150'd." (JSOF ¶29.) She noted that his behavior at the end was loud and boisterous, not aggressive or self-directed. (JSOF ¶29.) She also indicated that R.K.'s parents would continue management of his behavior with support from his counselor, pediatrician, and appropriate school staff. (JSOF ¶29.) Ms. Perez also spoke to R.K.'s counselor, at Mr. Ko's request. (JSOF ¶29.)

R.K. was at the YFSB for approximately two hours. (JSOF ¶30.)

**B.    Defendant's Motion for Summary Judgment**

In its Motion, Defendant contends that it is entitled to summary judgment because the undisputed facts demonstrate that Plaintiff cannot prevail on its § 1983 claim. First, Defendant argues that Plaintiff cannot establish that R.K.'s constitutional rights were violated. Second, Defendant contends that Plaintiff's § 1983 claim fails because Plaintiff has not and cannot show that any purported violation of R.K.'s constitutional rights was pursuant to one its policies, practices, or customs.

        1.    <u>Legal Standard - Municipal Liability Under 42 U.S.C. § 1983</u>

As indicated above, Plaintiff is asserting a claim against Defendant pursuant to §1983 for violation of R.K.'s Fourth and Fourteenth Amendment rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983. Under § 1983, local government entities - like Defendant City of Hayward - are considered "persons" and therefore may be sued. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality's liability must be premised on its own infliction of an injury, not on a respondeat superior theory. *Id.* at 690-91. In other words, local governments can be sued for monetary, declaratory, or injunctive relief where such suits arise out of unconstitutional actions that implement or execute a "policy statement, ordinance, or decisions officially adopted by that body's

7

officers[.]" *Id*. at 690-91; *see also Pembaur v. City of Cincinati*, 475 U.S. 469, 479 (1986) (stating that "[t]he 'official policy' requirement was meant to distinguish acts of the *municipality* from acts of *employees* of the municipality"). If no official policy exists, "customs and usages" may fulfill this element of a §1983 claim against a local government. *Monell*, 436 U.S. at 690-91. A municipality will not be held liable for an employee's actions outside the scope of these policies or customs. *Id*. at 691.

In his briefs and at oral argument, Plaintiff indicated that he is pursuing this case against Defendant on a respondeat superior theory. (*See* Dkt. #77, Ex. 1, Transcript of 7/30/09 hearing at 2:13-20.) Specifically, Plaintiff contends that Defendant is liable for Officer Pierce's purported violation of R.K.'s Fourth Amendment rights. (Dkt. #70 at 3:12-16 ("[R.K. has brought this action against Hayward on the basis that, through the actions of its officer Rodney Pierce, Hayward is liable for the violation of [R.K.]'s right, secured to him under Amendment IV[.]"); Dkt. #83, Supp. Resp. at 2.) As Defendant correctly points out, under *Monell* and its progeny, it cannot be held liable under § 1983 on a respondeat superior theory. Thus, to the extent that Plaintiff's claim is premised strictly on Officer Pierce's conduct, it fails as a matter of law. However, to the extent that Plaintiff's claim is based on the theory that *Defendant caused the purported constitutional violation through an official policy, practice, or custom pursuant to which Officer Pierce was acting*, Plaintiff may seek to hold Defendant liable under § 1983. Because this is the only way Plaintiff may proceed with his claim against Defendant, the Court will analyze Defendant's Motion and Plaintiff's claim accordingly.

To prevail on a § 1983 claim against a municipality under *Monell*, a plaintiff must satisfy a three-part test: (1) the local government official(s) must have intentionally violated the plaintiff's constitutional rights; (2) the violation must be a part of a policy, practice, or custom and may not be an isolated incident; and (3) a nexus must link the specific policy or custom to the plaintiff's injury. *Id.* at 690-92.

2. Constitutional Violation

Defendant first contends that it is entitled to summary judgment because Plaintiff cannot

8

1 establish that any violation of R.K.'s Fourth or Fourteenth Amendment rights occurred when Officer
2 Pierce took R.K. into temporary custody and had him transported to the YFSB office. Plaintiff,
3 however, maintains that a triable issue of fact exists as to whether Officer Pierce had sufficient cause
4 to detain R.K.

The Fourth Amendment to the United States Constitution, applicable to the State of California through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964). It is well-established that, under the Fourth Amendment, police are permitted to detain an individual only if they have an articulable and reasonable suspicion that the individual has committed or is about to commit a crime. *United States v. Woods*, 720 F.2d 1022, 1026 (9th Cir. 1983) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)). A seizure, which is a full-scale arrest, must be supported by probable cause. *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). Probable cause exists when the police have reasonably trustworthy information sufficient for a prudent person to believe that the accused had committed or was committing an offense. *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In this case, Defendant's primary argument is that Officer Pierce's act of taking R.K. into custody was authorized under California law, namely California Welfare & Institutions Code § 625(a). Alternatively, Defendant argues that Officer Pierce had probable cause to take R.K. into custody. Because the Court finds Defendant's first argument dispositive, it turns to it first.

      *a.*    *Reasonable Cause Under California Welfare & Institutions Code §625*

Defendant contends that Plaintiff cannot establish that R.K.'s constitutional rights were violated because Officer Pierce had reasonable cause to temporarily take R.K. into custody pursuant to California Welfare & Institutions Code section 625(a) and sections 601(b) and 602. Section 625 provides in pertinent part:

> A peace officer may, without a warrant, take into temporary custody a minor:

9

> (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section 601 or 602.

Cal. Welf. & Inst. Code §625(a).

Section 601 states, in relevant part:

> (b) If a minor has four or more truancies within one school year . . . or to correct the minor's persistent and habitual refusal to obey the reasonable and proper orders or directions of schools authorities . . . the minor is then within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court.

Cal. Welf. & Inst. Code §601(b).

Section 602 reads:

> (a) [A]ny person who is under the age of 18 years when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court which may adjudge a person to be a ward of the court.

Cal. Wel. & Inst. Code §602(a).

Beginning with section 625(a), Defendant argues that Officer Pierce was authorized to temporarily detain R.K. without a warrant, provided Officer Pierce had reasonable case to believe R.K. was a person meeting the descriptions in section 601 and section 602. Defendant maintains that the undisputed facts show that Office Pierce had reasonable cause to believe that R.K. met the criteria under both sections.

Although section 625 does not provide a definition for reasonable cause, California courts have articulated what is required to establish reasonable cause under other California Code sections. Specifically, the California Supreme Court has stated that reasonable cause to arrest exists when facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. *People v. Mower*, 28 Cal. 4th 457, 473 (Cal. 2002); *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511 (Cal. Ct. App. 2006) (discussing reasonable cause under California Penal Code § 847). Because the standard focuses on what a reasonable person would believe, it is objective in nature. *People v. Adair*, 29 Cal. 4th 895, 904-05 (Cal. 2003). When the facts are

10

undisputed, the issue of reasonable cause is a question of law. *See Giannis v. City and County of San Francisco*, 79 Cal. App. 3d 219, 224-25 (Cal. Ct. App. 1978). The Court will therefore apply this standard to assess Defendant's argument under Welfare & Institutions Code section 625(a).

    b.  *Section 601(b)*

First, Defendant asserts that Officer Pierce has reasonable cause to believe that R.K. was a minor who met the criteria in section 601(b). (Mot. at 10.) It proffers that Officer Pierce had been called to Eldridge Elementary School twice in a three-day period in response to R.K.'s unmanageable behavior. When Officer Pierce responded to the school's call on March 1, 2004, he was informed that there was a disruptive child who was threatening to kill a teacher and children in the classroom. The school officials also requested that he remove R.K. from the school and informed him that R.K. could not be left alone because he would destroy things. Additionally, Officer Pierce was informed that R.K. allegedly hit his teacher daily.

Subsequently, on March 3, 2004, Officer Pierce responded to a second call from Eldridge School regarding an incorrigible student, who turned about to be R.K. When Officer Pierce responded to that call, school officials informed him that R.K. was again threatening other students and staff. School staff also indicated that they did not feel safe with R.K. at the school because R.K. was behaving violently and threatened to kill or harm a teacher. Additionally, on either that day or when he responded to the March 1 call, school officials informed Officer Pierce that R.K. had scratched a teacher's arm.

Defendant argues that, based on the foregoing facts known to Officer Pierce at the time he detained R.K. on March 3, 2004, Officer Pierce had reasonable cause to believe that R.K. had persistently or habitually refused to obey the reasonable and proper orders or directions of Eldridge Elementary School staff. It therefore argues that Officer Pierce's temporary custody of R.K. pursuant to sections 625(a) and 601(b) was lawful and did not give rise to any Fourth Amendment violation.

In his Opposition, Plaintiff does not dispute that Officer Pierce was called to Eldridge Elementary School twice within a three-day period because of R.K.'s behavior. Plaintiff does,

11

however, argue that Hayward has failed to offer any facts in support of its assertion that the school officials reported that R.K. was "persistently and habitually" refusing to obey their orders. (Opp. at 10.) The Court disagrees. Reviewing the evidence Defendant cited in support of its argument, Officer Pierce testified that both calls from Eldridge Elementary School personnel concerned an "incorrigible student" who had made threats. When he arrived at the school on March 3, 2004 - two days after school officials had called him regarding R.K. behavior and threats - he was told that R.K. was again behaving violently and making threats. Officer Pierce testified that, based upon what the schools officials had reported to him about R.K.'s behavior, he determined that R.K. was refusing to obey the school officials' requests and demands, and was therefore an incorrigible child, meeting the criteria of section 601(b). (Dkt. #54, Ex. A, Pierce Tr. 33:1-19; 34:17-20; 35:6-14; 39:7-11 .) Given that the school officials had to call the police twice over a three day period regarding R.K.'s misconduct, there was a reasonable basis for Officer Pierce to conclude that R.K.'s refusal to obey school personnel was not an isolated occurrence, but was persistent and habitual.

Plaintiff also asserts that Defendant lacks evidence that R.K. was "out of control" and that the evidence shows that R.K. had only made verbal threats, not physical threats. Plaintiff's argument, however, misses the mark. While Plaintiff may dispute the severity of R.K.'s conduct - or at least the school official's description of it - Plaintiff has not proffered any evidence showing that, in fact, R.K. had been complying with the school official's directions and behaving properly, thereby creating a triable issue of fact on this issue. Nor has Plaintiff pointed to any facts demonstrating that it was unreasonable for Officer Pierce to rely on the school officials' statements concerning R.K.'s conduct.

In sum, the Court finds that Defendant has shown that, based on the undisputed facts, Officer Pierce had reasonable cause to believe that R.K. was person described in section 601(b), and was therefore authorized to take R.K. into temporary custody pursuant to section 625(a).

   *c.* *Section 602(a)*

Alternatively, Defendant contends that Officer Pierce had reasonable cause to believe that R.K. may have violated a California law, and was therefore authorized to take R.K. into temporary

12

custody pursuant to California Welfare & Institutions Code sections 625 and 602(a). In support, Defendant proffers that on both March 1 and 3, 2004, Eldridge School personnel informed Officer Pierce that R.K. had threatened to kill one of the teachers at the school, had threatened other staff and students, and had scratched a teacher's arm. (Dkt. #54, Ex. A, Pierce Tr. 18:22-19:1; 28:8-19; 29:16-25; 37:17-20; 40:5-12; Ex. B at 2-3.) Based on this information provided to Officer Pierce, Defendant argues that Officer Pierce had reasonable cause to believe that R.K. may have committed a battery under California Penal Code section 243.2 or made unlawful threats under Penal Code section 422.[7]

Plaintiff, however, contends that Defendant has not shown that it is beyond dispute that Officer Pierce had reasonable cause to believe R.K. violated either Penal Code section 243.6[8] or

---

[7] Penal Code section 242 defined battery as, "any willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242. Pursuant to California Penal Code section 243.2(a)(1), a person commits a misdemeanor battery when the battery occurs on school property.

With respect to unlawful threats, California Penal Code section 422 provides in relevant part:
> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Pen. Code § 422.

[8] California Penal Code section 243.6 provides:
When a batter is committed against a school employee engaged in the performance of his or her duties, or in retaliation for an act performed in the course of his or her duties, whether on or off campus, during the schoolday or at any other time, and the person commiting the offense knows or reasonably should know that the victim is a school employee, the battery is punishable by

422. With respect to Defendant's assertion that Officer Pierce had reasonable cause to believe that Plaintiff had committed a battery under Penal Code section 243, Plaintiff argues that, to succeed on its argument, "Hayward would have to offer undisputed evidence that its officer had observed or had reports of facts to show that [R.K.] willfully and unlawfully used force or violence on his teacher." (Opp. at 8.) As indicated above, Officer Pierce testified that school staff reported to him that R.K. had scratched a teacher's arm. Although Plaintiff argues that Officer Pierce's testimony should be disregarded or discounted because he gave it four years after the incident, Plaintiff has otherwise not pointed to any facts indicating that R.K. did not scratch the teacher. Based on this information, Officer Pierce had reasonable cause to believe that R.K. had committed a battery on school grounds.

Plaintiff also contends that Defendant has not established that Officer Pierce had reasonable cause to believe that R.K. made criminal threats as defined in Penal Code section 422. Plaintiff asserts that the statute requires that the threat "on its face and under the circumstances in which it is made, [be] so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (*Id.* at 8 (quoting Cal. Penal Code §422.) Plaintiff contends that, "Hayward's motion completely fails to offer the court any facts that on March 3, 2004[,] [R.K.] was anything but an obviously unarmed six year old boy: utterly incapable of executing his threat to kill his teacher." (Opp. at 9.) The Court is unpersuaded by Plaintiff's argument. It is undisputed that on both March 1 and 3, 2004, Eldridge School officials reported to Officer Pierce that R.K. had threatened to kill his teacher and had threatened other children in his class. Based on the fact that school officials had reported that R.K. had threatened both school staff and students, a reasonable person would have a strong suspicion that R.K. had made such threats. The Court therefore finds that Officer Pierce had reasonable cause to believe that R.K. had violated Penal Code section 422.

---

imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000), or by both the fine and imprisonment. []
     The Court notes that while the parties cite different penal code sections in connection with their arguments, the critical inquiry is whether Officer Pierce had reasonable cause to believe that R.K. committed a battery, which is the common element in both section 243.2 and 243.6.

14

      *d.*     *Conclusion*

Taken together, the Court finds that Defendant has established that Officer Pierce had reasonable cause to believe that R.K. was a person described in sections 601 and 602 of the Welfare and Institutions Code, and was therefore authorized to take R.K. into temporary custody under section 625(a). Further, because Officer Pierce's conduct was lawful under section 625(a), Plaintiff cannot establish any violation of R.K.'s constitutional rights, as is required to prevail on his § 1983 claim against Defendant. Defendant is therefore entitled to summary judgment on this basis.[9]

      3.    <u>Evidence of a Policy, Practice or Custom that was the Moving Force Behind Officer Pierce's Action</u>

Defendant next contends that it is entitled to summary judgment because Plaintiff lacks evidence that Officer Pierce was acting pursuant to policy, practice or custom. "Generally, [] the actions of individual employees can support liability against a municipality under § 1983 only if those employees were acting pursuant to an official municipal policy." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). However, even if a municipality does not expressly adopt the alleged policy, it may still be held liable under two alternative theories. *Id*. "First, if an employee commits a constitutional violation pursuant to a longstanding practice or custom, the employee's act is sufficient to support municipal liability." *Id*. (citing *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie*, 176 F.3d at 1235. However, the municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking

---

[9] Because the Court finds Defendant's argument under California Welfare & Institutions Code section 625(a) dispositive, the Court declines to address Defendant's argument that Officer Pierce had reasonable cause to take R.K. into custody.

    Defendant also contends that Plaintiff cannot establish any violations based on Officer Pierce's subsequent transportation of R.K. to the YFSB office and its employees' notification of R.K.'s parents. Based on Plaintiff's Opposition, it does not appear that Plaintiff is basing his claim on either of these actions. To the extent that they do form a basis for Plaintiff's § 1983 claim, Plaintiff has not responded to Defendant's arguments regarding its employees' compliance with Welfare & Institutions Code sections 626(b) and 627, and therefore effectively concedes to Defendant's arguments on these points.

1  authority. *Webb*, 330 F.3d at 1164.

2  Here, Hayward argues that Plaintiff has not - and cannot - identify a Hayward policy, practice, or custom that was responsible for the alleged deprivation of R.K.'s constitutional rights. In response, Plaintiff contends that Defendant's argument fails because Officer Pierce was acting pursuant to Hayward Police Department Departmental Procedure 3-444 ("Departmental Procedure 3-444") and because Defendant ratified Officer Pierce's conduct. The Court will evaluate each of Plaintiff's arguments, in turn.

### *a.     Defendant's Policy, Practice, or Custom*

Plaintiff first argues there is a basis to hold Defendant liable because Officer Pierce's conduct was "motivated by" Departmental Procedure 3-444 (IV)(C)(1), which provides in relevant part:

> IV.   PROCEDURES
> []
>    C.   STATUS OFFENDERS (601 W&I)
>       1. Authority for Detaining a Juvenile Status Offender
>          a. Pursuant to 625(a) W&I, a peace officer may, without a warrant, take into temporary custody a juvenile described in section 601 W&I.

(Dkt. #77, Def. Supp. Br., Ex. #2.) According to Plaintiff, this policy confers unfettered discretion upon officers to take a minor into custody when the officer believes the minor is one described in section 601 or 602 and "completely ignores the fact that section 625 of the California Welfare and Institutions Code requires that the officer have at least reasonable cause to believe that the minor comes within the statutory description of 601." (Supp. Opp. at 5.) Thus, Plaintiff asserts, "the action of Hayward's officer was entirely consistent with and in furtherance of its policy that the officer's belief, whether or not support by reasonable cause, is sufficient to warrant the custodial undertaking that in this case, [R.K.] contends, violated his constitutional rights." (Supp. Opp. at 6.)

The Court is unpersuaded by Plaintiff's construction of 3-444 (IV)(C)(1)(a). Reviewing the language of Procedure 3-444 (IV)(C)(1)(a), it is clear that rather than dispensing with section 625(a)'s reasonable cause standard, paragraph (C)(1)(a) adopts the reasonable cause standard as departmental policy. Specifically, Procedure 3-444 (IV)(C)(1)(a) begins with the phrase "[p]ursuant

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

16

to 625(a) W&I." As Defendant points out, replacing the words "pursuant to" with their ordinary, accepted meaning "in conformance with," demonstrates that the Departmental Procedure 3-444(C)(1)(a) requires adherence to the "reasonable cause" requirement in section 625(a). (Supp. Reply at 4 (citing http://www.merriam-webster.com/dictionary/pursuant.) Thus, Plaintiff's argument that 3-444 vested Officer Pierce with absolute discretion to detain R.K. finds no support in the actual language of the Procedure. More importantly, even accepting Plaintiff's argument that Officer Pierce was acting pursuant to Procedure 3-444 (IV)(C)(1)(a), his failure to adhere to the procedure does not give rise to *Monell* liability for Defendant. Particularly, paragraph (C)(1)(a) authorized officers to take a juvenile into temporary custody only when reasonable cause exists. Even if this Court were to find that Officer Pierce lacked reasonable cause to detain R.K., because such conduct would *violate* Defendant's policy, it could not be said to have caused or been the moving force behind R.K.'s injury. *See Monell*, 436 U.S. at 694; *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). The only way then that the Court could hold Defendant liable in this scenario would be on a respondeat superior theory. Because Defendant cannot be vicariously liable for Officer Pierce's actions, Plaintiff cannot succeed on his § 1983 claim against Defendant.

    *b.*  *Ratification*

Alternatively, Plaintiff contends that Defendant ratified Officer Pierce's conduct. "A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citing *Christie*, 176 F.3d at 1238 (internal quotation omitted)). "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Id.* (internal quotation in citation omitted.) "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.*

In support of his argument, Plaintiff relies on Defendant's responses to Plaintiff's First Set of Interrogatories Nos. 5, 6, and 7. Plaintiff's interrogatories provided as follows:

> **INTERROGATORY NUMBER FIVE:**
> State with particularity the policy or policies of the City of Hayward Police Department that permitted and/or required the transportation of [R.K.] from his elementary school to the

17

headquarters of the City of Hayward Police Department on March 3, 2004.

**INTERROGATORY NUMBER SIX:**
State with particularity the custom or customs of the City of Hayward Police Department that permitted and/or required the transportation of [R.K.] from his elementary school to the headquarters of the City of Hayward Police Department on March 3, 2004.

**INTERROGATORY NUMBER SEVEN:**
State with particularity the practice or practices of the City of Hayward Police Department that permitted and/or required the transportation of [R.K.] from his elementary school to the headquarters of the City of Hayward Police Department on March 3, 2004.[10]

(Dkt. #68, Supplemental Declaration of Nancy D. Hart, Ex. J.)  In response to each of these interrogatories, Defendant stated, in pertinent part:

> Hayward Police Officers are charged with discretion to make a determination at the scene of the necessity of intervention for "5150" evaluation or crisis counseling, based on the facts known to the officer at the time.  Taking into consideration the information that Officer Pierce had at the time of his response to Eldridge Elementary School on March 3, 2004, he determined that the best course of action would be to take temporary custody of [R.K.], pursuant to the authority of California Welfare & Institutions Code § 625(a), and that a YFSB counselor use an unmarked staff car to transport [R.K.] to the YFSB offices at the Hayward Police Department for crisis intervention counseling and/or possible "5150" evaluation.
>
> Defendant refers Plaintiff to Welfare & Institutions Code §§ 625(a) and 601; additionally, Hayward Police Department Departmental Procedure Number 3-444, effective January 2004[.]

(Dkt. #68, Ex. J. at 4-6.)  Plaintiff argues that based on Defendant's responses to Plaintiff's interrogatories, Defendant ratified Officer's Pierce's unlawful conduct, thereby satisfying the police, practice, or custom requirement.

Defendant, however, maintains that its interrogatory responses fail to raise a triable issue of

---

[10]Page 4 of Exhibit J appears to present a different version of Interrogatory Number 7.  (See Dkt. #68, Supplemental Declaration of Nancy D. Hart, Ex. J at 4.)  However, the Court reproduces the version set forth in Plaintiff's Supplemental Opposition.

18

fact as to whether it ratified the purported unconstitutional conduct. (Supp. Reply at 2.) First, Defendant argues that, because Officer Pierce had reasonable cause to take R.K. into temporary custody, there was no constitutional violation to ratify. Second, Defendant argues that its responses to interrogatories 5, 6, and 7 do not amount to ratification of Officer Pierce's conduct. Rather, Defendant contends that the interrogatories simply identify what authorities allowed Officer Pierce to take R.K. from the school to the police department. (Supp. Reply at 2-3.)

The Court has carefully considered the parties' arguments and agrees with Defendant. Contrary to Plaintiff's characterization, Defendant does not indicate that if Officer Pierce lacked reasonable cause under section 625(a), it nonetheless approves and/or adopts Officer Pierce's conduct. Instead, the responses simply indicate that based on the information Officer Pierce had before him, Officer Pierce "determined that the best course of action would be to take temporary custody of [R.K.], pursuant to the authority of California Welfare & Institutions Code § 625(a)[.]" The Court therefore rejects Plaintiff's argument that Defendant ratified Officer Pierce's conduct through its responses.

### *c.   Conclusion*

In sum, even assuming that Plaintiff could establish that Officer Pierce violated R.K.'s constitutional rights, Plaintiff cannot establish that his conduct was pursuant to Defendant's policy, practice, or custom, or that Defendant ratified Officer Pierce's conduct. Because Plaintiff cannot make this requisite showing, Plaintiff's § 1983 claim fails and Defendant is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the City of Hayward's Motion for Summary Judgment [Dkt. #64].

**IT IS SO ORDERED.**

Dated: September 29, 2009

Maria-Elena James
Chief United States Magistrate Judge